E-FILED
Monday, 05 October, 2026 11:45:05 AM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF ILLINOIS**
**PEORIA DIVISION**

FILED
10/05/2026
CLERK OF THE COURT
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

ILLINOIS AGRICULTURAL ASSOCIATION,

Plaintiff,

v.

RURAL MEDIA GROUP, INC.,

Defendant.

Case No. 26-cv-1208

**ORDER AND OPINION**

Plaintiff Illinois Agricultural Association ("IAA") has filed a Motion for Preliminary Injunction against Defendant Rural Media Group, Inc. ("RMG"). (D. 13). Evidentiary hearings on that Motion were held on September 3 and 9, 2026. Closing arguments were heard on September 23, 2026. For the reasons set forth below, IAA's [13] Motion is GRANTED.

## I. INTRODUCTION

This is now the second trademark infringement case IAA has filed against RMG stemming from RMG's use of IAA's "RFD" trademarks. *See Illinois Agricultural Assoc. v. Rural Media Group, Inc. et al*, CDIL Case No. 13-cv-1220 ("2013 Case"). These cases stem from IAA's Federal Trademark Registrations for "RFD" (U.S. Reg. Nos. 3,404,674 and 3,404,675) and "RFD Radio Network and design" (U.S. Reg. Nos. 3,404,671 and 3,404,672) (collectively, "RFD Marks"), which they have owned since April 1, 2008. *See* (D. 1-1; D. 1-2; D. 1-3; D. 1-4). IAA's RFD Marks are for "audio broadcasting, in Class 38" and "education and entertainment services, namely, a continuing program about news, markets, weather and feature reports accessible by radio, audio, and computer networks, in Class 41." *See id.*

IAA's 2013 Case stemmed from IAA's RFD Marks, RMG's unsuccessful attempts to acquire the RFD Marks from IAA, and then RMG proceeding to issue press release in May 2013 announcing its launch of SiriusXM radio channel to be called "Radio RFD." IAA's complaint alleged this violated its trademark rights and threatened consumer confusion in the agricultural broadcasting market and sought a preliminary injunction. Before ruling of IAA's motion for preliminary injunction, IAA and RMG entered a "Stipulation and Order" in June 2013. (2013 Case, D. 31 ("2013 Order")). The 2013 Order established that that that RMG would not:

> announce, advertise, promote, launch, disseminate, provide or broadcast a radio channel, station or broadcasting service, or programming and content therefor, whether through radio media or other means of transmitting radio programming including the internet, under the "Radio RFD" name, or any name, mark, call-sign or other source identifier that is confusingly similar to any of IAA's RFD Marks.

*Id.* at p. 1. The 2013 Order permitted RMG to continue using its pre-existing "RFD-TV" Marks (namely, RFD-TV, RFD-TV THE MAGAZINE, and RFD-TV THE THEATRE), even on radio, as long as the RFD-TV Marks were not used in the name of the radio channel or radio channel programming. *Id.* The Order also prohibits RMG from using the "RFD-TV" Marks "in connection with the radio channel that is likely to cause confusion regarding the name, source or sponsorship of the radio channel (*e.g.*, by referring to the radio channel as RFD-TV's Rural radio channel)." *Id.* at pp. 1–2. Following the 2013 Order, RMG renamed its SiriusXM radio channel "Rural Radio."

Presently before this Court is IAA's trademark infringement case against RMG, which stems from RMG's public announcement on January 26, 2026, that it was "transitioning from Rural Media Group to RFD Network" and that "RFD Network now unifies its core platforms—RFD-TV (linear), RFD+ (streaming), Rural Radio on SiriusXM, podcasts, and digital properties—

under a single network brand." (D. 1-5; D. 17, ¶¶ 33–34). Like before, this announcement came after RMG attempted and failed to acquire rights to IAA's RFD Marks.

In addition to IAA's RFD Marks and prior lawsuit, the following history of the parties' operations provides the background of this lawsuit.

## II. BACKGROUND[1]

### *A. IAA:*

IAA is a non-profit corporation founded in 1916 to champion farmers' interests through education, non-partisan lobbying and legislative advocacy, and community support. IAA is a membership-organization comprised of 92 county organizations and governed by a 20-member board that meets monthly in Bloomington, Illinois. It is one of the first farm bureaus in the country and operates under the tradename "Illinois Farm Bureau." IAA established RFD Radio in 1967. It was initially called "Rural Free Delivery," which was later shortened to the acronym "RFD." Over the last sixty years, IAA has continuously produced and broadcasted radio programming under the marks "RFD," "RFD Illinois," and now "RFD Radio Network."[2] RFD Radio Network is one of IAA's most important means for educating and informing its listeners on the latest news in agriculture.

Today, RFD Radio Network has over eighty radio station affiliates that broadcast throughout Illinois, with spillover into neighboring states (*e.g.* Iowa, Indiana, and Missouri) who utilize RFD Radio Network's information on their broadcasts. (*See* D. 30, pp. 24, 59). IAA target audience is primarily their members, listeners at affiliate stations, and rural America. Since 1967, IAA's RFD-branded programing has expanded overtime to include RFD Today (1995–present),

[1] IAA's and RMG's background information is based on the exhibits and testimony provided at the September 3, 2026, evidentiary hearing. (D. 30). At that hearing, Phillip Nelson, current IAA president, and Gatsby Gottsch Solheim, part-owner and chief financial and legal officer at RMG, both testified regarding the parties' backgrounds.

[2] RFD Radio Network was used in a publication in 1994, and IAA still uses this name today. (D. 30, p. 30).

RFD Livestock Report (2004–present), Best of RFD (2018–present), RFD Profit Watch (2019–present), RFD Vintage Country (2023–present), and RFD Town and Country Partners (2018–2023). RFD Radio Network's programming is also available online for on-demand streaming throughout the United States and worldwide at www.FarmWeekNow.com (www.farmweeknow.com/rfd_radio).

IAA filed applications with the USPTO for "RFD" and "RFD Radio Network" in June 2007, reflecting first use in 1967. These trademarks have been registered to IAA since April 1, 2008. Below is RFD Radio Network's registered trademarked design, which is displayed at the top of Farm Week Now's website:

RFD RADIO
NETWORK

Users that click on the RFD Radio Network link are taken to the homepage for RFD Radio Network Content where its various programs can be streamed on demand. https://www.farmweeknow.com/rfd_radio/ (last visited 09/22/2026). The top of this page states, "RFD Radio Network™ is the most listened to source for Illinois agriculture news and information. Listen on your favorite radio station that carries RFD Radio Network." *Id.* In addition to being able to stream RFD Radio Network, there are also separate links to stream on-demand segments from "RFD Illinois," "RFD Profit Watch," "Livestock Report," "Best of RFD," "Vintage Country," and a link to its "Talking Stalk Podcast with Illinois Farm Bureau." *Id.* There are also links to additional content created by RFD Radio Network, which includes coverage of all major events that impact agriculture, including those outside of Illinois. *See id.*; (D. 30, pp. 38–40).

***B. RMG:***

RMG is a Delaware corporation with its principal place of business currently located in Nashville, Tennessee. (D. 17, ¶¶ 2–3). In 1988 Patrick Gottsch, along with other family members, attempted to launch RFD-TV, a Nebraska television network focused on the needs and interests of agriculture and rural America. RFD-TV was not financially viable, and this attempt ended in bankruptcy in 1989.[3] For next 12–13 years, RFD-TV was not in use while Gottsch looked for investors. In December 2000, RFD-TV relaunched as a non-profit and was given a channel on the Dish Network. Around that same time RFD-TV magazine was also launched as a subscription business serving as a TV guide for the network and included stories about rural lifestyle, culture, and news. Gottsch also opened RFD-TV Theatre in Branson, Missouri (in the Ray Stevens Theater facility) around 2007 as a complimentary entertainment business.

In 2007, Gottsch converted RFD-TV to RMG, a for-profit company. RMG subsequently hired Don Imus to air his show on RFD-TV after Imus was let go from MSNBC for racist comments. Imus was last affiliated with RFD-TV in 2009. While the specific dates are not clear, RFD-TV expanded from the Dish Network to other network providers. These included DirecTV, Mediacom cable, and other affiliates. Ms. Solheim, Patrick Gottsch's daughter, testified that RFD-TV was available in 30 million homes, but no evidence as to the number of viewers was provided.

Solheim also testified that there was a high-definition version of RFD-TV on those affiliate networks called RFD HD. She could not recall the exact dates RFD HD was used (thinking it was sometime between 2008 and 2014 or 2016), and she did not identify any of the affiliate networks that used RFD HD. She did, however, recall that there had been an application to register RFD HD. The USPTO denied RMG's application for the RFD HD mark due to a likelihood of confusion with IAA's RFD Marks.

---

[3] No evidence has been provided that any cable network carried the station during this time.

In 2012, Patrick Gottsch approached IAA about buying or licensing the RFD Marks. IAA declined. Despite IAA's refusal, RMG proceeded with launching the Radio RFD channel on SiriusXM. This led to IAA filing the 2013 Case to enjoin RMG's use of an allegedly confusing similar mark on SiriusXM Radio. Shortly after the 2013 Case was filed, the stipulated 2013 Order set forth above was entered under which RMG agreed that it would "not announce, advertise, promote, launch, disseminate, provide or broadcast a radio channel, station or broadcasting service… under the 'Radio RFD' name, or any name, mark, call-sign or other source identifier that is confusingly similar to any of IAA's RFD Marks." (2013 Case, D. 31). IAA also agreed that RMG could continue to use its RFD-TV marks in accordance with the terms of that Order. *Id.* In December 2014, the IAA and RMG entered into a confidential settlement agreement making the 2013 Order permanent.

Following the 2013 case, RMG then renamed its SiriusXM radio channel "Rural Radio," which it continues to use. In 2014, RMG launched a digital subscription streaming service for live and on-demand programming called "The Country Club," because not every household had access to RFD-TV at this time. (D. 30, p. 95). In 2020, the Country Club was rebranded as RFD-TV Now, with an app rebuilding work occurring around the same time as RMG launched another streaming service for its sister network, the Cowboy Channel.

In May 2024, Pat Gottsch passed away and his three daughters now own RMG. Prior to passing, Gottsch entered into an agreement to sell the Cowboy Channel. The acquisition of the Cowboy Channel closed in November 2024, and included a six-month Transition Service Agreement, requiring RMG to continue providing essential operational support to the new buyer until May 2025.

In June 2025, RMG hired brand consultant Culture Key to help plan and design a rebrand of RMG's different offerings under one "branded house." (D. 30, p. 102). Ultimately, they decided to replace RMG with "RFD Network" as the umbrella name. *Id.* at 164. Under the RFD Network, RMG included RFD-TV and Rural Radio, rebranded RFD-TV Now as RFD+, and added RFD Studios, RFD News, and RFD Originals as new marks. *Id.* Ms. Solheim testified that "[t]he intent behind rebranding [RMG] to RFD Network was to…signal to the business community primarily, like our advertisers and others, that these are a connected family of brands." *Id.* at 161.

Below are RMG's brand design before January 2026, and rebranded design as the RFD Network, which launched on January 26, 2026:




(RMG's Pre-January 2026 Branding).




**RFD News** **RFD Originals** **RFD Studios**

(RMG's post-January 26, 2026, RFD Network Branding).

During the rebranding process RMG was aware of IAA's RFD Marks and the 2013 Order, which is why they did not change the name of Rural Radio, despite their brand consultant's suggestion to do so. RMG also reached out to IAA in July 2025 seeking to open up discussions about licensing and/or purchasing the RFD Mark in connection with their rebranding. On September 18, 2025, IAA declined to allow use of the RFD Marks. On January 24, 2026, RMG filed an application with the United States Patent and Trademark Office ("USPTO") to register "RFD Network." RMG also submitted applications to register "RFD-TV," "RFD+," "RFD News," "RFD Studio," and "RFD Originals."

On January 26, 2026, RMG issued a press release titled "*RFD NETWORK ENTERS A NEW CHAPTER WITH MODERNIZED BRAND AND CONTENT-FIRST, MUILTI-PLATFORM STRATEGY"* announcing that it was formally transitioning from "Rural Media Group" to "RFD Network" which unifies its core platforms—RFD TV, RFD+ (streaming), Rural Radio SiriusXM, podcasts, and digital properties—under a single network brand." (D. 1-5; D. 14-15). The press release could be found on RMG's website, http://www.rfdtv.com, which remained the same both before and after rebranding to RFD Network. The press release also announced that RFD-TV Now was transitioning to RFD+, and that "RFD Network would be expanding its original programming through RFD Studio, the home of RFD Originals." *Id.* It also stated that "RFD Network continues to be anchored by RFD News, the umbrella for its live news and market coverage." *Id.*

On May 26, 2026, the USPTO issue a Non-Final Office Action, "Section 2(d) Refusal—Likelihood of Confusion" in response RMG's application for registration of "RFD Network" mark "because of a likelihood of confusion with marks in U.S. Registration Nos. 3404675 [IAA's "RFD" Service Mark], 1158438 [IAA's "RFD Illinois" Service Mark], and 3404672 [IAA's "RFD Radio Network" Service Mark]. When comparing the "RFD Network" mark to IAA's RFD Marks,

the USPO found that the "marks are nearly identical in appearance, sound, commercial impression and connotation." Specifically, IAA's "RFD" and "RFD Illinois" Marks and RMG's applicant mark "share[d] the similar fundamental element of 'RFD' for related services" and that IAA's "RFD Radio Network" Mark shared "similar, fundamental element[s] of 'RFD' and 'NETWORK' for related services," to RMG's "RFD Network" mark. RMG has received the same Non-Final Office Action, "Section 2(d) Refusal—Likelihood of Confusion" for its applications to register "RFD-TV," "RFD+," "RFD News," "RFD Studios," and "RFD Originals."

RMG has not yet responded to this non-final office action. It intends to do so. Because the action by the USPTO is not final and RMG has not yet had the opportunity to respond the weight of the USPTO's findings is, although not without value, certainly limited.

***C. This Lawsuit:***

On May 19, 2026, IAA filed this lawsuit against RMG federal trademark infringement under 15 U.S.C. § 1114, false designation and federal common law trademark infringement under 15 U.S.C. § 1125(a). IAA also brings state law claims against RMG alleging violations of the Illinois Consumer Fraud and Deceptive Practices Act, 815 ILCS 505/2, Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/2, unfair competition, and breach of contract based on the 2013 Order. (D. 1). IAA subsequently filed a Motion for Preliminary Injunction asking this Court to preliminarily enjoin RMG from using "RFD Network," "RFD+," "RFD News," "RFD Studios," and "RFD Originals" during the pendency of this lawsuit as they violate IAA's trademark rights. (D. 13; D. 14). RMG filed a Memorandum in Opposition. (D. 28).

Two evidentiary hearings were held on September 3rd and 9th on IAA's Motion for Preliminary Injunction. (D. 30; D. 38). Phillip Nelson, IAA president; Gatsby Gottscha Solheim, RMG's part-owner and chief financial and legal officer; and Adam Weiner, RMG employee,

testified at the September 3rd hearing. (D. 30). Expert witness testimony from Dr. David Neal, on behalf of IAA, and Hal Poret, on behalf of RMG, was heard on September 9th. (D. 38). Ms. Solheim also testified at the September 9th hearing. *See id.* at pp. 125–45. Closing arguments were heard on September 23rd. This Order follows.

## III. PRELIMINARY INJUNCTION STANDARD

Earlier this year, the Seventh Circuit provided the following legal standard for granting a preliminary injunction in a trademark case:

> A district court may grant a preliminary injunction where the "movant shows that it is likely to succeed on the merits of its claims and that traditional legal remedies would be inadequate, such that it would suffer irreparable harm without injunctive relief." *Grubhub Inc. v. Relish Labs LLC*, 80 F.4th 835, 843 (7th Cir. 2023) (citing *Life Spine, Inc. v. Aegis Spine, Inc.*, 8 F.4th 531, 539 (7th Cir. 2021)). Trademark law affords a rebuttable presumption of irreparable harm to movants who show they are likely to succeed on the merits of their trademark infringement claims. *Id.*; § 1116(a). If the movant shows it is likely to succeed on the merits, the court next "weighs the harm of denying an injunction to the movant against the harm of granting an injunction to the nonmovant." *Grubhub*, 80 F.4th at 844. The court also considers the public interest in granting versus denying the preliminary injunction request. *Life Spine*, 8 F.4th at 539.

*Illinois Tamale Co., Inc. v. LC Trademarks, Inc.*, 164 F.4th 648, 655 (7th Cir. 2026). Because a preliminary injunction is an extraordinary remedy, to succeed IAA "'need not show that it definitely will win the case,' but it 'must demonstrate at a minimum how it proposes to prove the key elements of its case.'" *See id.* (quoting *Grubhub Inc.*, 80 F.4th at 843); *see also Life Spine*, 8 F.4th at 540) (distinguishing this as more demanding than a "better than negligible chance"). Under trademark law, "once the movant establishes a likelihood of success on the merits, it is statutorily entitled to a rebuttable presumption of irreparable harm." *Grubhub Inc.*, 80 F.4th at 844 (citing 15 U.S.C. § 1116(c)).

## IV. DISCUSSION

### A. Lanham Act—Trademark Infringement:

The Lanham Act, which is the core federal trademark statute, defines "trademark" as "any word, name, symbol, or device, or any combination thereof" that is used "to identify and distinguish his or her goods…from those manufactured or sold by others and to indicate the source of the goods." 15 U.S.C. § 1127. To protect marks, the Lanham Act sets up a voluntary registration system where the mark owner may apply to the USPTO to have its mark placed on the federal register. *See Jack Daniel's Properties, Inc. v. VIP Products LLC*, 599 U.S. 140, 145–46, 143 S.Ct. 1578, 216 L.Ed.2d 161 (2023). The lead criterion for registration is that the mark serves as a "trademark to identify and distinguish goods." *Id.* at 146 (citing 3 McCarthy § 19:10 (listing the principal register's eligibility standards)). If it does and all other criteria are met, the "the registering trademark owner receives certain benefits, useful in infringement litigation." *Id.* (citing *Iancu v. Brunetti*, 588 U.S. 388, 391, 139 S.Ct. 2294, 204 L.Ed.2d 714 (2019) (noting registration is *prima facie* evidence of the mark's validity)).

The Lanham Act also provides a federal cause of action for trademark infringement, *see* 15 U.S.C. §§ 1114 and 1125(a), which IAA has invoked here. *See Abitron Austria GmbH v. Hetronic International, Inc.*, 600 U.S. 412, 143 S.Ct. 2522, 216 L.Ed.2d 1013 (2023) (noting §§ 1114(a) and 1125(a)(1) both prohibit "unauthorized use in commerce of a protected trademark when, …that use is likely to cause confusion"). To prevail on either claim, IAA must show that: (1) it owns a valid, protectable trademark, and (2) that RMG's use of the mark is likely to cause confusion among consumers. *See Grubhub*, 80 F.4th at 844.

It is undisputed that IAA's RFD Marks are valid, protectable trademarks. Because IAA registered RFD and RFD Radio Network in 2008, and RFD Illinois prior to that, and has used the RFD Marks continuously for over five years, they are incontestable. *See* 15 U.S.C. § 1065. As a result, RMG cannot—and does not—argue that the RFD Marks are not protected by the Lanham

Act. RMG does, however, argue that customers are unlikely to be confused by its use of "RFD Network," "RFD+," "RFD News," "RFD Studios," and "RFD Originals" names.

**B. Likelihood of Confusion:**

"To decide if there is a likelihood of confusion, [courts] ask whether consumers who might use either product would likely attribute them to a single source." *Uncommon, LLC v. Spigen, Inc.*, 926 F.3d 409, 425 (7th Cir. 2019). The Seventh Circuit generally considers seven factors when making this decision: "(1) the similarity of the marks in appearance and suggestion; (2) the similarity of the products; (3) the area and manner of concurrent use; (4) the degree of care likely to be used by consumers; (5) the strength of the plaintiff's mark; (6) whether any actual confusion exists; and (7) the defendant's intent to palm off its goods as those of the plaintiffs." *Ty, Inc. v. Jones Group, Inc.*, 237 F.3d 891, 898 (7th Cir. 2001). Though no factor is decisive and the weight given to each factor will vary depending on the facts of the case, "usually the similarity of the marks, the defendant's intent, and actual confusion are particularly important." *Grubhub Inc.*, 80 F.4th at 843 (quoting *AutoZone, Inc. v. Strick*, 543 F.3d 923, 929 (7th Cir. 2008).

*1. Similarity of the mark:*

We view the mark as a whole to determine whether two marks are similar. *AutoZone, Inc.*, 543 F.3d at 929; *see also Grubhub Inc.*, 80 F.4th at 848 ("The commercial impression of a trade-mark is derived from it as a whole, not from its elements separated and considered in detail." ) (quoting *Estate of P.D. Beckwith, Inc. v. Comm'r of Patents*, 252 U.S. 538, 545–46, 40 S.Ct. 414, 64 L.Ed. 705 (1920)). Therefore, we must compare the marks "in light of what happens in the marketplace and not merely by looking at the two marks side-by-side." *Grubhub Inc.*, 80 F.4th at 848 (quoting *AutoZone, Inc.*, 543 F.3d at 930); *see also Ty Inc.*, 237 F.3d at 898. Thus, "the test is not whether the public would confuse the *marks,* but whether the viewer of an accused mark would

be likely to associate the product or service with which it is connected with the source of products or services with which an earlier mark is connected." *Grubhub Inc.*, 80 F.4th at 848 (emphasis in original) (quoting *James Burrough Ltd. v. Sign of Beefeater, Inc.,* 540 F.2d 266, 275 (7th Cir.1976)). The court should also "consider whether the customer would believe that the trademark owner sponsored, endorsed or was otherwise affiliated with the product." *AutoZone, Inc.*, 543 F.3d at 930 (quoting *Nike, Inc. v. "Just Did It" Enters.,* 6 F.3d 1225, 1228–29 (7th Cir.1993)).

Here, IAA has sufficiently demonstrated for preliminary injunction purposes that a consumer would believe that the marks are connected to the same source. In addition to IAA's expert findings, which will be discussed under the "actual confusion" category, the marks are not just similar but use the same identifying name. Specifically, the distinguishing word of both parties' marks is "RFD," which is the first word in all the marks. "RFD" is IAA's trademark, and it has been using that mark since 1967 in connection with radio and broadcasting throughout Illinois, and more recently for steaming on the internet. In addition to IAA's RFD Marks ("RFD," "RFD Radio Network," and "RFD Illinois"), it also uses RFD Today and RFD Profit Watch. The marks RMG seeks to use are "RFD Network," "RFD+," "RFD News," "RFD Studios," and "RFD Originals." All marks include "RFD" followed by a generic word or symbol used in media. Additionally, both marks are being used for news and/or entertainment purposes, including radio broadcast and online streaming, aimed at a particular audience. The evidence suggests that there is not only overlap in the parties' audiences, but also their advertisers.

While there are dissimilarities in the designs of the marks and they are portrayed in different colors, the prominent similarities between the marks are substantial. Moreover, because radio and online streaming are aural mediums, the sound and use of the mark (rather than how the mark looks) will more likely determine its similarity to other marks. Therefore, RMG's use of

"RFD," which is IAA's trademark, does not just sound similar but is the same. Moreover, despite RMG's insistence that they "went to great lengths to ensure rebranding would not result in customer confusion as it relates to Rural Radio" relying heavily on the 2013 Order, they ignore that the 2013 Case was narrowly limited to the radio, and RFD Marks include services beyond radio and they have used it on other mediums than the radio. Furthermore, Rural Radio now falls under the RFD Network.

2. *Similarity of the product:*

Like the similarity of the mark factor, the inquiry for comparing whether two products are similar "is not whether they are interchangeable, but whether 'the parties' products are the kind the public might very well attribute to a single source…" *Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 463 (7th Cir.2000) (at risk for overruling on other grounds). "The rights of an owner of a registered trademark extend to any goods or services that, in the minds of consumers, might be put out by a single producer." *AutoZone, Inc.*, 543 F.3d at 931. Therefore, "[a] likelihood of confusion may exist even if the parties are not in direct competition, or their products and services are not identical." *Id.* (internal citations omitted).

These two parties are not involved in entirely different markets. Rather the services provided are commercially related and centered around agriculture, farming, and rural America. While RMG offers additional entertainment content on a larger scale, historically through television or magazines, there is evidence that some of that content overlaps. Specifically, when it comes to the radio and internet streaming regarding news, commodities, weather, and educational programs directed at farming in Illinois and the Midwest. Considering the similarity of the marks and the overlap in content provided, IAA has demonstrated that a reasonable customer could conclude that some services provided by RMG are attributable to IAA.

*3. Area and manner of concurrent use:*

The third factor addresses "whether there is a relationship in use, promotion, distribution, or sales between the goods or services of the parties." *CAE, Inc. v. Clean Air Engineering, Inc.*, 267 F.3d 660, 681 (7th Cir. 2001) (quoting *Forum Corp. of N. Am. v. Forum, Ltd.,* 903 F.2d 434, 442 (7th Cir. 1990)) (internal quotations omitted). As stated above, there is evidence that both parties broadcast their products on the radio, and the 2013 Order prohibits RMG from using "RFD" on the radio due to the likelihood of confusion, even though IAA doesn't have a channel on SiriusXM. Both parties also offer content online. There is also evidence that both parties have advertised their products in the same magazine, suggesting congruences exist between their potential customers, at minimum in Illinois.

*4. Degree of care exercised by consumers:*

The fourth factor to consider is degree of care likely to be exercised by customers. This factor supports IAA's position. The Seventh Circuit has held that "[t]he more widely accessible and inexpensive the products and services, the more likely that consumers will exercise a lesser degree of care and discrimination in their purchases." *AutoZone, Inc.*, 543 F.3d at 933 (quoting *CAE, Inc.*, 267 F.3d at 683). Moreover, in the context of radio stations, courts have found that the degree of care likely exercised by customers listening to the radio is likely not very high as most people are doing other things while they are listening to the radio. There is also no financial stake when choosing a radio station. While RMG attempts to differentiate its radio station because it only offers Rural Radio to paid subscribers on SiriusXM (a subscription-based satellite radio service), it ignores that it has rebranded to offer its radio broadcast under the "RFD Network," which is substantially similar to IAA's RFD Radio Network.

For these reasons, the Court finds that this factor tends to support IAA's assertions regarding the degree of care radio listeners will exercise and that IAA has demonstrated that the evidence favors the likelihood of confusion.

*5. Strength of IAA's mark:*

"The stronger the mark, the more likely it is that encroachment on it will produce confusion. A mark's strength ordinarily corresponds to its economic and marketing strength." "The stronger the mark, the more likely it is that encroachment on it will produce confusion." *Sorensen v. WD-40 Co.,* 792 F.2d 712, 726 (7th Cir. 2015); *see also AutoZone, Inc.*, 543 F.3d at 933. The IAA has produced evidence that it has a strong mark, especially within the state of Illinois. The IAA has been using the RFD Marks since 1967. Since then, it has expanded from 18 affiliate radio channels to 92. It has also utilized the internet and online streaming to reach listeners outside of Illinois. The IAA president further testified that in 2024, RFD Radio Network achieved a 72.6 CUME rating among Illinois Class 1+ farmers, which is the highest of all agricultural radio networks in Illinois. It has also been recognized by the American Farm Bureau Federation and the National Association of Farm Broadcasting.

On the other hand, there currently is no evidence of market strength outside of Illinois. There is also little evidence provided regarding economic strength. While the IAA president testified that IAA spends approximately $100,000.00 per year on advertising, evidence supporting that assertion was not provided. He also testified that IAA made money from advertisers, but neither the exact amount nor evidence supporting that assertion have been produced. Given the limited evidence concerning this factor at this stage, the Court cannot determine to what extent it could contribute to the likelihood of confusion but acknowledges IAA has demonstrated that there is some evidence to establish this factor.

*6. Evidence of Actual Confusion:*

"Evidence of actual confusion, which can be presented as either direct or survey evidence, is not essential to the of a likelihood of confusion, but where present it 'is entitled to substantial weight.'" *Grubhub Inc.*, 80 F.4th at 852 (quoting *CAE, Inc.*, 267 F.3d at 685. As the fact finder at the preliminary injunction stage, it is within the district court's purview to weigh the evidence submitted by the parties on this issue. *Id.*

Here, the IAA president testified that he has "had a couple county presidents that have said, *What's the difference between RFD Radio Network and RFD Network*," and he had to explain which content was produced by IAA. (D. 30, pp. 59–60). These conversations have occurred over the last few months when he saw them at different events. No evidence was provided, however, regarding the exact number of people or their identity that asked President Nelson about the RFD Network. Moreover, there is no evidence of consumers' actual confusion other than Dr. Neal's survey. There is also limited evidence regarding how much RMG has marketed itself as RFD Network in the few months prior to these lawsuits being filed creating the opportunity for actual confusion among a greater number of people to occur. Therefore, while the Court has no reason to not believe the IAA President or that IAA members were confused when they saw the RFD Network mark, based on the lack of evidence currently presented his testimony does little to establish direct, actual confusion. *Grubhub, Inc.*, 80 F.4th at 852 ("depending on the circumstances, isolated incidents of actual confusion may be disregarded as *de minimis*") (citing *Packman*, 267 F.3d at 645 (7th Cir. 2001) (collecting cases)).

On September 9th this Court heard expert testimony from IAA's expert Dr. David Neal and RMG's expert Hal Poret. Dr. Neal was qualified as an expert in survey methodology and consumer behavior who was hired by IAA to assess whether RMG's use of "RFD Network" for

radio offerings likely caused consumers to believe that it was affiliated or approved by IAA. (D. 38, pp. 9–10). Poret is a survey researcher who designs, supervises, analyzes, and reports on consumer surveys. *Id.* at p. 68. IAA objection to him testifying as an expert. *Id.*

In June 2026, Dr. Neal conducted an online "Squirt-style" confusion survey among U.S. adults who listen to or intend to listen to rural radio and who use Google to search for such content. He used the Squirt methodology because consumers encounter the parties' marks in proximity and operationalized proximity with Google results for "RFD Radio." Google searches for "RFD Radio" showed IAA's link first, with RMG's link for RFD-TV second, and additional RMG links in close proximity on the first page and on subsequent pages. Dr. Neal testified he skipped the RFD-TV link that appeared second, and other entries referencing RFD-TV on the first google page to keep the focus on "RFD Network." He ultimately used links that appeared on the second and third pages of Google but were limited to "RFD Network" alone for his survey. This was a major source of criticism by Poret, RMG's expert.[4] In fact, Poret had nothing good to say about Dr. Neal's methodology and conclusions, calling them "worthless."

While this Court has some reservations concerning Dr. Neal's selection of certain "foils" to be used in the survey, the Court finds the methodology and conclusions essentially sound. Dr. Neal testified that his survey resulted in a finding that 16.3% of consumers,[5] who would not otherwise have been confused, were confused because of RMG's use of RFD Network. (*See* D. 38, pp. 22–27 (explaining survey results)). Dr. Neal concluded, holding everything else constant, RMG's use of RFD Network "is causing a substantial likelihood of confusion among relevant

[4] Although the Court notes that at closing arguments on September 23rd, RMG's attorney confirmed that the rebranded RFD Network is still using the old domain name www.rfdtv.com.

[5] That is based on 61.9% confusion in the test group (who saw RMG's "RFD Network" mark) less 45.6% in the control cell (substituting the non-infringing "RBL Network"). (D. 38, p, 26).

consumers in the context of these Google search results." *Id.* at p. 27; *see also Nike, Inc. v. "Just Did It" Enters*., 6 F.3d 1225, 1231 (7th Cir. 1993) (citing *Burrough Limited v. Sign of Beefeater, Inc.*, 540 F.2d 266, 277–79 (7th Cir. 1976) (noting "as a matter of law survey showing 15% of customers confused evidences a likelihood of customer confusion.")).

It may well be at trial that RMG presents a survey contradicting Dr. Neal's survey; that is a matter for another day. At this time, however, the Court finds that IAA has presented evidence showing they are likely to succeed at showing actual confusion.

*7. Intent to palm off:*

The Court does not believe that RMG intended to confuse consumers—ultimately, just did not care. RMG chose to go forward with this rebrand because that is what they wanted to do, knowing it would be resisted by IAA. RMG did it anyway. Even in the face of a final rejection from the USPTO several years prior when they tried to register RFD HD due to the likelihood of confusion from IAA's RFD Marks and now followed by non-final rejections from the USPTO of the RFD marks that are the subject of this litigation.

Additionally, IAA has provided evidence that its RFD Marks have attained notoriety in the agricultural industry, especially in Illinois, which is a geographic area where RMG competes. *See Sands, Taylor & Wood Co. v. Quaker Oats Co.,* 978 F.2d 947, 963 (7th Cir.1992) (holding intent to confuse may be inferred in some circumstances from the similarity of the Marks where the senior mark has great notoriety). The Seventh Circuit has held that when "the marketing and business presence of the senior mark [IAA's RFD Marks in this case] are nearly ubiquitous in the geographic area where the junior mark competes, a trier of fact can easily conclude that the creator of a strikingly similar junior mark intended to confuse." *AutoZone, Inc.*, 543 F.3d at 943.

Accordingly, IAA has demonstrated that there is evidence supporting likelihood of confusion under this factor.

From these findings we conclude that IAA is likely to succeed on the merits of its infringement claim(s) under the Lanham Act. The evidence clearly establishes a likelihood of public confusion as to the source of origin of RFD Network, RFD+, RFD News, RFD Studios, and RFD Original, which is the bedrock for injunctive relief. This is reinforced by IAA's RFD Marks being incontestable and the USPTO examining attorney's initial findings rejecting RMG's applications for RFD-formative marks for RFD HD for likelihood of confusion (final decision) and making an initial rejection under § 2(d) of RMG's RFD marks in this case.[6]

**C. Substantial Threat of Irreparable Injury:**

Under 15 U.S.C. § 1116(a), IAA, as a party seeking a preliminary injunction, is entitled to a rebuttable presumption of irreparable harm upon this Court's finding that it has a likelihood of success on its trademark infringement claim. *See Ill. Tamale Co.*, 164 F.4th at 654; *see also Eli Lilly & Co.*, 233 F.3d at 469 ("Irreparable harm is generally presumed in the case of trademark infringement); *see also* (7th Cir.2000); *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 16 (7th Cir. 1992) (recognizing the "well-established presumption that injuries arising from Lanham Act violations are irreparable, even absent a showing of business loss").

Here, IAA asserts that not only has RMG failed to rebut the resumption of irreparable harm, it has independently demonstrated a likelihood of irreparable harm because it cannot control the nature and quality of goods RMG is offering under confusingly similar marks, IAA has spent over 60 years building the reputation and goodwill associated with its RFD Marks and they are subject to tarnishment due to association with RMG's RFD marks over which they have no control, and

[6] This Court takes judicial notice of these USPTO records under Fed. R. Evid. 201.

is heightened due to IAA being "a non-partisan, not-for-profit advocacy organization that carefully vets its messaging and public interest positions" being associated with RMG's for-profit programming. IAA also asserts that loss of goodwill and reputational danger are not readily quantifiable or compensable in money damages. This Court agrees.

RMG's argument that IAA is not entitled to the rebuttable presumption of irreparable harm under § 1116(a) because they have not demonstrated a strong likelihood of success on the merits is inconsistent with this Court's findings above. Moreover, while the Court agrees with RMG that IAA's arguments relating to past programs aired by RMG involving controversial figures such as Don Imus and Paula Dean are not persuasive, it does nothing to address IAA's loss of control over the representation and association with its RFD Marks going forward.

**D. Balance of Equities:**

IAA's argument that any harm to RMG is "self-inflicted" is well taken. RMG argues that it "reasonably believed that it was complying with the 2013 Order, which was expressly limited to radio and did not restrict the use of 'RFD' without the 'TV' suffix in non-radio contexts." (D. 34, ¶ 49). This asks the Court to ignore that RMG knew that, in addition to the 2013 Order, IAA owned the trademarks for "RFD" and "RFD Radio Network," which is evidenced by RMG asking IAA to purchase or license their RFD Marks and receiving multiple rejections from the USPTO after they tried to register their RFD marks when IAA declined letting them use them. This is not a case where the distinguishing letters in the marks are similar, but rather the same.

Despite knowing all of this—and having admitted that they could have filed for a declaratory judgment regarding their rights under the 2013 Order—RMG instead decided to go ahead and spend approximately $620,000.00 to rebrand using RFD, and now asks the Court to

balance this harm in their favor.[7] The Court will not do so. The evidence shows that RMG knew that IAA owned the RFD Marks. Therefore, RMG had a duty to select a trademark that would avoid confusion when rebranding. *See Wesley-Jessen Div. of Schering Corp. v. Bausch & Lomb Inc.*, 698 F.3d 862, 868 (7th Cir. 1983). For these same reasons, RMG "cannot now complain that having to mend its ways will be too expensive." *Processed Plastic Co. v. Warner Communications, Inc.*, 675 F.2d 852, 859 (7th Cir. 1982).

The Court also finds that the brief time RMG has spent rebranded as the RFD Network compared to the decades it has spent using its prior names, minimizes any potential harm to RMG posed by the Court's preliminary injunction. The injunction is also narrowly tailored to preserve the status quo during the pendency of this litigation as it only applies to RMG's use of "RFD Network," "RFD+," "RFD News," "RFD Studios," and "RFD Originals." RMG is free to return to its prior branding, which includes the use of the RFD-TV marks as set forth in the 2013 Order. The Court is not forcing RMG to stop providing any of its services. For these reasons, the Court finds that the hardships set forth by RMG do not warrant denial to preliminary relief to IAA, where a strong likelihood of success on the merits has been shown and a strong potential for irreparable injury has been shown.

The final element for the Court to consider is whether the granting of preliminary relief will disserve the public interest. *See Wesley-Jessen Div. of Schering Corp*, 698 F.3d at 868 ("The question is not whether the public interest will be served, but whether the public interest will be *dis*served.") (emphasis in original). Based on the record currently before this Court and the findings and conclusions contained in this Order, it is clear that there is a likelihood of confusion,

---

[7] According to RMG, its rebranding expenditures included: $189,440.86 to CultureKey; $155,800.00 to Salty Cactus Creative; $158,960.10 to Thrive Group; $14,616.55 to Skyline Displays LLC; $74,000.01 to I'm From the Future LLC; and $26,457.50 in legal fees. (D. 34, ¶ 85 (citing D. 28-1, pp. 11–12).

between broadcasts provided under IAA's RFD Marks and the RFD marks being used by RMG. *See Eli Lilly & Co.*, 233 F.3d at 469 ("public interest is served by [an] injunction because enforcement of trademark law prevents consumer confusion").

Moreover, RMG's argument that IAA's proposed injunction would "deprive millions of consumers of access to RMG's television, streaming, and digital services" is unsupported and unpersuasive. As stated above, RMG can continue to provide these services under the names used prior to January 2026, including the RFD-TV marks. IAA has met the burden of showing by a preponderance of the evidence that the public interest will be served by the granting of a preliminary injunction.

## V. CONCLUSION

For the reasons stated above, IAA's [13] Motion for Preliminary Injunction is GRANTED against Defendant RMG. The Clerk is DIRECTED to separately enter the Preliminary Injunction Order.

ENTERED October 5, 2026.

/s/ Michael M. Mihm
Michael M. Mihm
United States District Judge